UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JAMES WESLEY FLETCHER,

    Plaintiff,    Case No. 1:18-cv-1160

v.    Honorable Janet T. Neff

UNKNOWN BRADFORD et al,

    Defendants.
_____/

**OPINION**

    This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Bevington, Dickinson, Skipper, and Miller.

**Discussion**

    I.    Factual Allegations

    Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan. The events about

which he complains, however, occurred at the Michigan Reformatory (RMI) in Ionia, Michigan. Plaintiff sues several RMI employees: Sergeant Unknown Bradford; Lieutenant Unknown Bevington; Corrections Officer Unknown Dickinson; Deputy Warden Gregory Skipper; and Inspector Unknown Miller. Each defendant is sued in his or her official and personal capacity.

Plaintiff alleges that Defendant Bradford retaliated against Plaintiff for engaging in conduct protected by the constitution. Specifically, Plaintiff avers that Bradford read a letter of complaint regarding conditions at RMI that Plaintiff had sent to the Ombudsman.[1] Bradford responded by threatening to make Plaintiff's stay at RMI a living hell. A couple of days later, Bradford was reviewing a misconduct charge written by another officer against Plaintiff. Plaintiff claims Bradford demanded, and then directly ordered, that Plaintiff plead guilty or Bradford would write a "disobeying a direct order" misconduct. Finally, Plaintiff alleges that Bradford interfered with Plaintiff's participation in a urine test for drugs by refusing to allow Plaintiff to take the test after an hour had passed.[2] Instead, she wrote a misconduct report against Plaintiff for refusing to provide a sample. Ultimately, however, Plaintiff was found not guilty of the misconduct because the hearing officer determined Plaintiff was never given an opportunity to provide a urine sample. Instead, when he was eventually asked to provide the sample after having access to water for a sufficient time, Defendant Bradford refused to permit him to provide a sample because it was too late—more than an hour had passed.

---

[1] "The Ombudsman's Office is a public office within the Michigan Legislative Council. Mich. Comp. Laws § 4.352. Michigan law authorizes the office to investigate and issue reports relating to complaints by inmates, among other issues. Id. §§ 4.354, 4.360(1)." *Griffin v. Condon*, No. 17-1931, 2018 WL 3769187, at *3 (6th Cir. Aug. 8, 2018).

[2] MDOC Policy Directive 03.03.115 permits the collection of urine samples from prisoners for substance abuse testing. If a prisoner claims he cannot produce the sample upon request, he is given continuous access to water for one hour and instructed to drink a sufficient amount to enable him to produce the sample. MDOC Policy Directive 03.03.115, ¶ V (Eff. 1/1/2002). Prisoner who "refuse" to submit to a substance abuse test must be charged with a major misconduct for substance abuse. Id. at ¶ II.

Plaintiff alleges that Defendant Dickinson conspired with Bradford with respect to the urine test retaliation. He alleges that Defendants Bevington, Skipper, and Miller are responsible for Bradford's misconduct because Plaintiff told them that Defendant Bradford intended to retaliate against Plaintiff, but Bevington, Skipper, and Miller failed to stop the retaliation from occurring.

Plaintiff contends that Bradford's retaliatory conduct violates Plaintiff's First Amendment rights. He also claims Bradford treated Plaintiff differently than the other similarly situated prisoners who were being drug tested and, therefore, she violated Plaintiff's Fourteenth Amendment right to equal protection of the laws. Finally, Plaintiff raises two state law claims: that Bevington, Skipper and Miller were grossly negligent and that all Defendants intentionally inflicted emotional distress on Plaintiff. Plaintiff seeks hundreds of thousands of dollars in compensatory and punitive damages as well as a declaratory ruling that Defendants have violated Plaintiff's constitutional rights.

II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. First Amendment Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to

prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff identifies three instances of protected conduct and three "adverse actions." First, Plaintiff claims his letter to the legislative ombudsman complaining about the conditions at RMI and inviting an investigation is protected conduct. In previous cases, the MDOC has conceded that participation in an ombudsman's investigation is protected conduct. *Griffin v. Berghuis*, 563 F. App'x 411, 420 (6th Cir. 2014). Certainly, the right to petition the government for redress of grievances is "among the most precious of the liberties safeguarded by the Bill of Rights." *United Mine Workers v. Ill. State Bar Ass'n*, 389 U.S. 217, 222 (1967). It is the expressed purpose of the Ombudsman's office to receive complaints from prisoners. *See, e.g.,* Mich. Comp. Laws § 4.354. Accordingly, the Court concludes that Plaintiff's letter of complaint to the ombudsman constitutes protected conduct.

Plaintiff's second instance of claimed protected conduct consists of his complaints to Bevington, Skipper, and Miller regarding Defendant Bradford's threats. Plaintiff filed a formal grievance regarding Bradford's conduct. That is certainly protected conduct. The protected status of Plaintiff's informal complaints to Bradford's supervisors, is a closer question. *Siggers-El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005); *Treadwell v. Almy*, No. 1:10-cv-560, 2013 WL 6668680 (W.D. Mich. Dec. 18, 2013) (concluding that the protected nature of informal complaints to a supervisor is not clearly established). Recently, in *Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018), the Sixth Circuit clarified the matter: "An inmate has a right to file 'non-frivolous' grievances against prison officials on his own behalf, whether written or oral." *Id*. at 625.

Accordingly, the Court will accept Plaintiff's allegations that his informal complaints to Bevington, Skipper, and Miller regarding Defendant Bradford's threats are protected conduct.

Plaintiff's last instance of protected conduct is his refusal to plead guilty to a misconduct based on Defendant Bradford's demand. "[T]he right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). In the context of prison, of course, the right to speak or not speak is necessarily constrained. The Supreme Court "has repeatedly recognized the need for major restrictions on a prisoner's rights." *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129 (1977). Thus, an inmate "retains [only] those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

The Second Circuit Court of Appeals, in *Burns v. Martuscello*, 890 F.3d 77 (2d Cir. 2018), recently considered whether declining to speak could be protected conduct for a prisoner. The *Burns* panel concluded that refusing to provide false information and refusing to serve as a snitch on an ongoing basis were not inconsistent with the plaintiff's status as a prisoner and, accordingly, were protected by the First Amendment. *Id*. at 88-93; *but see Dixon v. Gonzales*, No. 1:09-cv-172, 2009 WL 3416005, at *3 n.1 (E.D. Cal. Oct. 21, 2009) ("To the extent Plaintiff is attempting to state a claim for retaliation based upon a right to not speak (i.e., not to 'snitch'), that claim also fails."). Here, where MDOC policy provides the prisoner the option to plead guilty to a Class II misconduct and waive the hearing[3] during initial review, it would seem anomalous to say that a prisoner's decision to *not* plead guilty is "inconsistent with his status as a prisoner."

---

[3] MDOC Policy Directive, 03.03.105, ¶¶ LL. and OO (Eff. date 7/1/2018).

Accordingly, at this stage of the proceedings, the Court will accept that Plaintiff's refusal to plead guilty is "protected conduct."

Plaintiff has also alleged adverse action. Defendant threatened to make Plaintiff's stay at RMI a "living hell" and then threatened to write a major misconduct report for disobeying a direct order and then wrote a major misconduct report claiming that Plaintiff refused a drug test where Defendant Bradford may have prevented Plaintiff's compliance with the request. The first threat—to make Plaintiff's stay at RMI a "living hell"—is not, standing alone, sufficient to constitute adverse action. In *Hardy v. Adams*, No. 16-2055, 2018 WL 3559190 (6th Cir. Apr. 13, 2018), the Sixth Circuit Court of Appeals considered a virtually identical threat:

> Certain threats, however, can be so "inconsequential" or "de minimis" that they do not rise to the level of a constitutional violation. *Thaddeus-X*, 175 F.3d at 398. The alleged threat by Adams that she would make Hardy's life "hell" is simply too vague to pass this threshold. Without more, the vagueness of the alleged threat precludes any finding that a person of ordinary firmness would be deterred from engaging in protected conduct. Moreover, Hardy makes clear his position that the "hell" to which Adams was referring was the issuance of misconduct tickets and that she was the catalyst for the "campaign of harassments" that he suffered. But he failed to establish that there was, in fact, any link. And, even if he could, as discussed above, there is no dispute that he was found guilty of all of the misconduct charges.

*Hardy*, 2018 WL 3559190, at *3. Plaintiff's allegations, however, differ from Hardy's in two respects. First, Plaintiff does allege a link to establish that the misconduct tickets were Bradford's intended "hell." Second, Plaintiff was found "not guilty" of the misconduct tickets. Moreover, whether or not Bradford's "living hell" threat rises to the level of adverse action, under *Maben*, 887 F.3d at 266-67, the potential consequences of the misconducts, even if such consequences were never imposed, suffice to constitute adverse action.

Finally, Plaintiff alleges statements by Bradford with respect to each adverse action that reveal a retaliatory motive. Bradford threatened to make Plaintiff's stay a living hell because of the letter to the ombudsman; Bradford threatened to write a disobeying a direct order misconduct

7

because Plaintiff refused to plead guilty; and Bradford threatened to make the drug test misconduct stick because Plaintiff had complained to Bradford's supervisors. Accordingly, Plaintiff has sufficiently alleged a First Amendment retaliation claim against Defendant Bradford.

IV. Fourteenth Amendment Discrimination

Plaintiff claims Defendant Bradford discriminated against him when she singled him out and denied him the opportunity to provide a urine sample when other prisoners were given the opportunity. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The amendment essentially directs that all person similarly situated should be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Otherwise lawful actions of the state can be rendered unlawful if the actions improperly discriminate among persons similarly situated. For example, when a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440.

There is some protection against state discrimination even where neither a fundamental right nor a suspect class is at issue. The Supreme Court acknowledged the viability of "class of one" equal protection claims in *Village of Willowbrook v. Olech,* 528 U.S. 562 (2000), stating:

> Our cases have recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *See Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441 (1923); *Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty*., 488 U.S. 336 (1989). In so doing, we have explained that "'[t]he purpose of the equal protection

8

clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" *Sioux City Bridge Co., supra*, at 445 (quoting *Sunday Lake Iron Co. v. Township of Wakefield*, 247 U.S. 350, 352 (1918)).

*Village of Willowbrook*, 528 U.S. at 564.

Plaintiff's claim fails because he does not allege facts to demonstrate that the other prisoners were similarly situated; any allegations that state that other prisoners were similarly situated are entirely conclusory. *See, e.g., Aldridge v. City of Memphis*, 404 F. App'x 29, 42 (6th Cir. 2010) ("First, '[t]o satisfy [the Equal Protection Clause's] threshold inquiry, [plaintiffs] must allege that [they] and other individuals who were treated differently were similarly situated in all material respects.'") To be a similarly-situated person, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'" *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 460 (6th Cir. 2011) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)).

Here, the comparative prisoners are markedly different in that Plaintiff declined to provide a sample when first asked, (Misconduct Hr'g Report, ECF No. 1-1, PageID.28), and then more than an hour passed before he was asked again. There is no indication that any other prisoner was similarly situated in that very material respect. Therefore, Plaintiff fails to state an equal protection claim.

V. <u>Eighth Amendment</u>

Plaintiff also attempts to rebrand his First Amendment retaliation and Fourteenth Amendment equal protection claims as Eighth Amendment claims by stating that Defendants' were "deliberately indifferent" to Plaintiff's right to be free from retaliation and intentional

9

discrimination.  (Compl., ECF No. 1, PageID.13-14.)  The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).  Plaintiff's claim that Defendants were deliberately indifferent to his First and Fourteenth Amendment rights is not the same thing as deliberate indifference to Plaintiff's health and safety.  Plaintiff's conclusory deliberate indifference allegations fail to state a claim.

### VI. Conspiracy

Plaintiff alleges that Defendant Dickinson is liable with Defendant Bradford for the "urine sample" incident because they acted in concert or conspired to violate Plaintiff's rights. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are conclusory and speculative. His allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete facts that do not suggest agreement between Bradford and Dickinson. To the contrary, Dickinson demonstrated every intention to collect a sample from Plaintiff even after an hour had passed. Dickinson only moved on to the next prisoner when Defendant Bradford ordered him to do so. Moreover, it was Dickinson's testimony that prompted the hearing officer to find Plaintiff not guilty. If, indeed, Dickinson was Bradford's co-conspirator, he was not a very good one.

Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. He relies entirely on a highly attenuated inference from the mere fact that Dickinson was collecting the urine samples. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. Under the circumstances, it is a far more likely possibility that Dickinson was entirely oblivious to any retaliatory scheme by Bradford. Plaintiff fails to state a plausible claim of conspiracy. Accordingly, Plaintiff has failed to state a claim against Defendant Dickinson.

VII.     Defendants Bevington, Skipper, and Miller

Plaintiff alleges that Defendants Bevington, Skipper, and Miller are responsible for Defendant Bradford's "urine sample" retaliation because he had previously complained to them about Bradford and they failed to stop her retaliatory conduct.[4] To the extent Plaintiff seeks to impose liability on these Defendants because they are Bradford's superiors, he has failed to state a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v.*

---

[4] Plaintiff did not complain to Defendants Bevington, Skipper, or Miller until after Bradford's second adverse action; therefore, under Plaintiff's theory, they could only be liable, if at all, for Bradford's subsequent actions.

*Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Simply complaining to a prison employee's superior about the employee's retaliatory conduct or threat of retaliatory conduct does not render the superior liable even if the superior takes no action. *Wingo v. Tennessee Dept. of Corr.*, 499 F. App'x 453, 454-455 (6th Cir. 2012); *Shehee*, 199 F.3d at 300.

Plaintiff has failed to allege that Defendants Bevington, Skipper, or Miller engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

VIII. State Law Claims

Plaintiff alleges that Defendants Bevington, Skipper, or Miller are liable under state law for gross negligence. "[A] valid claim for gross negligence under Michigan law requires allegations of conduct 'akin to willful, wanton, or reckless misconduct.'" *Reilly v. Vadlamudi*, 680 F.3d 617, 628 (6th Cir. 2012). Plaintiff's allegations fall far short. Plaintiff alleges that he complained to Bevington, Skipper, and Miller. Bevington assured Plaintiff that he would personally deal with Bradford. He took on the responsibility for hearing the misconduct that prompted Plaintiff's concern and, thereby, addressed the very threat of retaliation that Plaintiff feared. Bevington also informed Plaintiff that he had addressed the issue with Bradford. Skipper and Miller likewise informed Plaintiff that they would address the retaliatory threat with Bradford. Indeed, Plaintiff never suffered any consequence from the threat that he brought to the attention of

Bevington, Skipper, and Miller—that Bradford would write a disobeying-a-direct-order misconduct against Plaintiff for his conduct during Bradford's review of the unauthorized-occupation-of-a-cell misconduct.

Plaintiff specifically alleges that Bradford, one week after his complaints to Bevington, Skipper, and Miller, threatened to retaliate against Plaintiff for complaining to Bevington, Skipper, and Miller. Plaintiff never brought this threat to the attention of Bevington, Skipper, and Miller before it was brought to fruition through Bradford's alleged "urine sample" misconduct report.

There are simply no facts alleged in Plaintiff's complaint that would support an inference that Defendants Bevington, Skipper, or Miller acted willfully, wantonly, or recklessly. Accordingly, Plaintiff has failed to state a gross negligence claim against those Defendants.

Plaintiff also alleges that all five Defendants are liable for intentionally inflicting emotional distress on Plaintiff. Michigan looks to the Restatement definition to identify the elements of this tort: "Four elements are identified in this definition: (1) 'extreme and outrageous' conduct; (2) intent or recklessness; (3) causation; and (4) 'severe emotional distress.'" *Roberts v. Auto-Owners Ins. Co.,* 374 N.W.2d 905, 908 (Mich. 1985) (citing *Ross v. Burns*, 612 F.2d 271, 273 (6th Cir. 1980). For the reasons stated above with respect to Plaintiff's gross negligence claim, the Court concludes that Plaintiff has failed to allege that Defendants Bevington, Skipper, or Miller participated in extreme or outrageous conduct or that they acted intentionally or recklessly. Accordingly, Plaintiff has failed to state an "intentional infliction" claim against those three Defendants.

Additionally, for the reasons stated above with respect to Plaintiff's conspiracy claim against Defendant Dickinson, the Court concludes that Plaintiff has failed to allege that

14

Defendant Dickinson participated in extreme or outrageous conduct or that he acted intentionally or recklessly. Accordingly, Plaintiff has failed to state an "intentional infliction" claim against Defendant Dickinson as well.

Plaintiff's intentional infliction claim against Defendant Bradford remains.

**<u>Conclusion</u>**

Having conducted the review required by the Prison Litigation Reform Act, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), the Court determines that all of Plaintiff's claims against Defendants Bevington, Skipper, Miller, and Dickinson will be dismissed for failure to state a claim and Plaintiff's Fourteenth Amendment and Eighth Amendment claims against Defendant Bradford will be dismissed for failure to state a claim, as well.

An order consistent with this opinion will be entered.

Dated:  November 14, 2018  /s/ Janet T. Neff
Janet T. Neff
United States District Judge